**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

MAVERICK GAMING LLC,        ) Civil Action
                        ) No. 1:22-cv-00068-FYP
          _Plaintiff_,   )
                        )
vs.                    ) **Motions Hearing** (via Zoom)
                        )
UNITED STATES OF AMERICA, _et_  )
_al._,                   ) Washington, D.C.
        _Defendants_.  ) **April 28, 2022**
                        ) Time:  2:00 p.m.
_____

**Transcript of <u>Motions Hearing</u>** (via Zoom)
**Held Before**
**The Honorable Florence Y. Pan** (via Zoom)
**United States District Judge**

<u>A P P E A R A N C E S</u>

For the Plaintiff:     **Lochlan F. Shelfer**
(via Zoom)           **Matthew D. McGill**
                       GIBSON, DUNN & CRUTCHER, LLP
                       1050 Connecticut Avenue, Northwest
                       Washington, D.C. 20036-5306

For the United States of America Defendants:
(via Zoom)           **Hillary Hoffman**
                       **Rebecca M. Ross**
                       U.S. DEPARTMENT OF JUSTICE
                       Indian Resources Section, Environment
                       and Natural Resources
                       P.O. Box 7611
                       Washington, D.C. 20044

For the Washington State Defendants:
(via Zoom)           **Kristin Beneski**
                       **Brian H. Rowe**
                       OFFICE OF ATTORNEY GENERAL/WA
                       800 Fifth Avenue, Suite 2000
                       Seattle, Washington 98104

```
 1      For the Washington State Defendants (continued):
        (via Zoom)                    Tera M. Heintz
 2                                    WASHINGTON STATE ATTORNEY GENERAL'S
                                      OFFICE
 3                                    Solicitor General's Office
                                      1125 Washington Street Southeast
 4                                    PO Box 40100
                                      Olympia, Washington 98504-0100
 5      _____

 6      Stenographic Official Court Reporter:
        (via Zoom)                    Nancy J. Meyer
 7                                    Registered Diplomate Reporter
                                      Certified Realtime Reporter
 8                                    333 Constitution Avenue, Northwest
                                      Washington, D.C. 20001
 9                                    202-354-3118

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

1

2          (REPORTER'S NOTE:  This hearing was held during the
COVID-19 pandemic restrictions and is subject to the
3  limitations of technology associated with the use of
technology, including but not limited to telephone and video
4  signal interference, static, signal interruptions, and other
restrictions and limitations associated with remote court
5  reporting via telephone, speakerphone, and/or
videoconferencing.)

6

7          THE COURTROOM DEPUTY:  This is Civil Action 22-68,

8  Maverick Gaming LLC v. United States of America, et al.

9          Counsel, please identify yourselves for the record,

10  beginning with the plaintiff.

11          MR. SHELFER:  Hello, Your Honor.  Lochlan Shelfer for

12  plaintiff, Maverick Gaming.

13          THE COURT:  Good afternoon, Mr. Shelfer.

14          MR. MCGILL:  Good afternoon, Your Honor.  Matthew

15  McGill, also of Gibson, Dunn & Crutcher, for Maverick Gaming.

16          THE COURT:  Good afternoon, Mr. McGill.

17          MS. BENESKI:  Good afternoon, Your Honor.  Kristin

18  Beneski for the Washington State officials.

19          THE COURT:  Good afternoon, Ms. Beneski.

20          MS. HOFFMAN:  Good afternoon, Your Honor.  Hillary

21  Hoffman for the federal defendants, and with me is Rebecca

22  Ross, my colleague at DOJ, and Jody Schwartz, counsel for

23  Interior.

24          THE COURT:  Good afternoon.

25          So this case is here for a hearing on the outstanding

1    motions.  There's a motion to transfer the case, as well as a

2    motion for leave to file a first amended complaint.

3          Let me ask the parties:  How do you plan to argue these

4    motions?  I guess this is with respect to the defendants.  Will

5    Ms. Beneski be arguing on behalf of all defendants, or will

6    Ms. Hoffman also be arguing?

7          MS. BENESKI:  Your Honor, I will be arguing on behalf

8    of the state officials.  And I think since it's our motion to

9    transfer -- although the federal defendants did join that -- I

10   will -- I will be the one primarily presenting argument on that

11   motion, I expect.

12         THE COURT:  And with respect to the motion to amend

13   the complaint?

14         MS. BENESKI:  I will be arguing for that as well.

15         THE COURT:  Okay.  And, Ms. Hoffman, are you

16   requesting leave to also make arguments today?

17         MS. HOFFMAN:  I would like the opportunity to make

18   any additional statements, if -- if that would be okay with the

19   Court.

20         THE COURT:  Of course, yes.  But Ms. Beneski will

21   primarily be doing your arguments?

22         MS. HOFFMAN:  That's right.  That's right.

23         THE COURT:  Okay.  Thank you.

24         All right.  So I have a preliminary question I wanted to

25   ask the parties.  Would you agree or not agree that these --

1    both motions really hinge on the resolution of the motion to

2    amend the complaint?  If I denied the motion to amend the

3    complaint, would it naturally follow that I would grant the

4    motion to transfer?

5         I guess this is really a question for the plaintiff.

6    Because it doesn't seem that there was a substantive rejoinder

7    to the argument that there's a lack of personal jurisdiction

8    over the state defendants, and it seemed that the arguments in

9    the opposition to the motion to transfer kind of relied upon me

10   granting the motion to amend.

11        Mr. Shelfer.

12             MR. SHELFER:  Well, thank you, Your Honor.

13        Well, so the Washington State officials' basis for

14   seeking transfer was their argument regarding personal

15   jurisdiction, and -- and as Maverick explained, adjudicating

16   these sorts of personal jurisdiction arguments would require

17   extensive expenditure of court and litigant resources; it might

18   require jurisdictional discovery.  That's really why Maverick

19   amended its complaint is to accommodate the Washington State

20   officials' reluctance to litigate in this forum, to streamline

21   the issues before the Court.  And so -- so Maverick has amended

22   its complaint to eliminate any of those concerns.

23        If this Court were to -- were to deny Maverick's motion

24   to amend the complaint and drop the state defendants, Maverick

25   would respectfully request the opportunity to -- to then brief

1    the personal jurisdiction arguments.  Although at that point --

2    you know, I don't think that the -- the Rule 19 arguments are

3    particularly persuasive, which is the sole argument that

4    prevents the motion to amend.

5         So -- so we would respectfully request the opportunity

6    to -- to brief and possibly take jurisdictional discovery on

7    the personal jurisdiction question and give --

8         THE COURT:  It's -- why wouldn't you have asked for

9    that in advance of this hearing?  You filed an opposition, and

10   you didn't make any of these requests and did not on the merits

11   oppose that.  Haven't you now waived any other opposition to

12   the motion to transfer?

13        MR. SHELFER:  Well, Your Honor, so the -- you know,

14   our position has been that the motion to amend -- that really a

15   motion -- we -- we filed a motion to dispel any possible

16   confusion, but we actually think that -- that leave is not

17   required; that we can do so as of right.  And so, you know --

18        THE COURT:  What if I disagree with you on that?

19        MR. SHELFER:  I think if you disagree with -- with us

20   on that position and -- and think that -- that leave is

21   required, you know, we -- we respectfully maintain that we

22   don't think that -- we didn't intend to waive the argument of

23   personal jurisdiction.  We were, sort of, trying to accommodate

24   the others' -- the Washington State officials' desires and

25   to -- to accommodate those wishes.  But that would be -- that

1    would be our position on that.

2            THE COURT:  I see.

3        Ms. Beneski, what's your position on whether -- if I

4    denied the motion to amend the complaint, whether they should

5    have an opportunity to make additional filings to oppose your

6    motion to transfer?

7            MS. BENESKI:  Your Honor, our -- our position is that

8    arguments in favor of personal jurisdiction are waived.  The

9    plaintiff had an adequate opportunity to respond to our motion

10   to transfer.  They did not respond to the personal jurisdiction

11   arguments on their merits, but they did respond to our

12   arguments in favor of transfer in the interest of justice and

13   for convenience.  And because they did not disagree that this

14   Court lacks personal jurisdiction over the Washington State

15   officials, we believe that that argument is waived.

16           THE COURT:  All right.  Thank you.

17       Ms. Hoffman, did you want to be heard on this point?

18           MS. HOFFMAN:  If I may take a moment, Your Honor.

19   United States agrees that plaintiff has waived any argument on

20   personal jurisdiction, regardless of their intent.

21       And I just want -- want to be very clear, Your Honor.

22   The state defendants have raised a jurisdictional argument in

23   their transfer motion, and the Court needs to assure themselves

24   of jurisdiction before -- arguably before making any other

25   rulings on the case.  So not only did state defendants file

1    their motion first, but they've raised jurisdictional issues

2    that arguably need to be resolved at the forefront.

3             THE COURT:  All right.  From what you've just said,

4    though, Ms. Hoffman, the fact that the state is now appearing

5    before me to argue against the motion to amend, how does that

6    affect the jurisdictional stance of the state?

7             MS. HOFFMAN:  Your Honor, it's the United States'

8    position that the Court should address the transfer motion

9    first, grant the transfer motion, and let the transferee court

10   deal with whatever amended -- leave-to-amend issues there are

11   left by the plaintiff.

12            MS. BENESKI:  Your Honor --

13            THE COURT:  It will be a short hearing if they've

14   waived any arguments on personal jurisdiction and I should deal

15   with the transfer motion first.  Then it seems that they've

16   pretty much conceded the transfer motion, and then the motion

17   to -- but the thing is the motion to amend -- it could be dealt

18   with in Washington State, but it contemplates litigation in

19   this Court.  That's the whole point of it.  So it would be a

20   little bit odd to transfer it to Washington State for them to

21   decide that aspect of it.

22            What's your position on this, Ms. Beneski, on what order

23   in which I should resolve these motions?  Because in my mind, I

24   was thinking I could just resolve the motion to amend and the

25   motion to transfer would follow.  Go ahead.

1          MS. BENESKI:  Your Honor, that's certainly one way to

2    do it.  Both motions are before this Court, but the state

3    defendants agree with the federal government that the Court

4    could decide the transfer motion first.  That would be

5    perfectly appropriate to do.

6          I would direct the Court to a case called *Center for*

7    *Environmental Science v. National Park Service.*  The citation

8    for that is 75 F. Supp. 3d 353, and it's from the District of

9    D.C. in 2014.  In that case, under similar circumstances, the

10   court declined to decide the Rule 19 issue and transferred the

11   case in the interest of convenience and justice.  And we -- we

12   do believe that because personal jurisdiction and proper venue

13   are threshold issues, it would be perfectly appropriate for the

14   Court to decide those issues first, transfer the case, and let

15   the transferee court decide the motion to amend and the Rule 19

16   issues, if necessary.

17          THE COURT:  Mr. Shelfer, do you want to be heard on

18   the order in which I should decide these motions?

19          MR. SHELFER:  Yes.  Thank you, Your Honor.

20          So in terms of sequence, it's Maverick's position that

21   the Court should first consider the motion to amend.  Courts

22   routinely address motions to amend the complaint before

23   considering other motions because plaintiffs are masters of

24   their complaint and it can often -- often have an impact on

25   the -- on the corresponding motion.  So we respectfully contend

1    that this -- in terms of sequence, the motion to amend

2    logically is antecedent.

3              THE COURT:  What about the jurisdiction issue?

4              MR. SHELFER:  Well, we think that once the motion to

5    amend has been -- by jurisdiction, do you mean the --

6              THE COURT:  No.  I'm talking about to argue the

7    motion to amend.

8              MR. SHELFER:  Yeah.

9              THE COURT:  The State of Washington is opposing it,

10   and they'd be -- I'd be making rulings that would bind them

11   when they allege I don't have personal jurisdiction and you've

12   waived any argument to oppose that.  So it doesn't seem

13   appropriate for me to do that.

14             MR. SHELFER:  Well, so the -- I would respectfully

15   disagree; that the -- the -- because -- because Maverick is a

16   master of its complaint, it has the right to drop defendants,

17   and only futility of amendment could -- could prevent that from

18   happening.  The remaining defendant in this case, the

19   United States, has not argued that there is a jurisdictional

20   problem with doing that.  And -- and so the -- so,

21   sequentially, the motion to amend would come first,

22   particularly since, as we've maintained, leave is not

23   required --

24             THE COURT:  It seems to me the flaw in your argument

25   is that it's not taking into account we have to litigate

 1    whether you're allowed to amend your complaint.  You're arguing

 2    as if that's happened.  But in your first complaint, you named

 3    the Washington State defendants as defendants.  Now you're

 4    filing a motion to amend, and they are opposing the motion to

 5    amend.

 6         Yet before you filed your motion, they argued that I

 7    have no personal jurisdiction, this Court has no personal

 8    jurisdiction over them, and you didn't oppose that.  So I'm

 9    starting to think procedurally I should grant the motion to

10    transfer and this should all be litigated in Washington State

11    in light of that procedural posture.

12         MR. SHELFER:  Well, Your Honor, we would respectfully

13    disagree with that position.  If that -- this is, you know, an

14    argument that has not yet been raised.  If it would be helpful

15    to this argument, there could be supplemental briefing on this

16    point in particular.  Again, you know, I think it's -- it's

17    largely moot because Maverick does have -- is master of its

18    complaint and has the right to -- to amend it.

19         And -- and that sort of brings up one additional point,

20    which is that this isn't really the most proper vehicle to

21    consider the Rule 19 issues, really.  That's a 12(b)(7) at a

22    later point in the litigation, which, you know, if -- if the

23    Washington State officials, for instance, were intervening

24    to -- to raise that issue there, that might be an appropriate

25    place to litigate this issue; but in the current posture, it's

1    really just a motion to amend, which we maintain leave is not

2    required, and then at that point, the litigation can continue

3    between Maverick and the United States.

4         THE COURT:  So I guess we should maybe address your

5    argument that you can amend as of right.  That's something that

6    perhaps we should address because I don't agree with that.

7         And it just seems to me that although normally these

8    Rule 19 motions are argued in a different procedural posture,

9    in this case you're moving to amend and they're opposing on the

10   grounds that your new complaint, your proposed amended

11   complaint, is futile.  And the reason they believe it's futile

12   is because of all the arguments about them being an

13   indispensable party.  So I think that that is properly before

14   the Court in the context of arguing your motion to amend and

15   their opposition, which says that your new complaint is futile.

16        So, I mean, I was prepared to have argument on all of

17   that, but I want to think for a moment about what is the

18   correct order in which to do this, because that's not what I

19   was planning to do this afternoon.  I had thought that we would

20   address the motion to amend the complaint, and if I denied that

21   motion, then I would grant the motion to transfer, since the

22   state defendants would remain parties to the action if I deny

23   that motion.  And they have argued that there's no personal

24   jurisdiction over them, and the plaintiff hasn't really opposed

25   that, and so I would have granted the motion to transfer.

1       But the United States and the state defendants have

2   given me something I want to think about for a moment, which is

3   whether I should simply grant the motion to transfer, which is

4   largely unopposed, and then just have the parties argue this

5   before the court in Washington.

6       Now, I just want to point this out for a moment.  If I

7   were to do that, grant the motion to transfer, send the case to

8   Washington, the parties would argue before the state court

9   in -- or the District Court in Washington, the amendment of the

10  complaint, I guess.  Then, I guess, the plaintiff would have to

11  move to transfer the case back to D.C. if they prevail.  I

12  don't know if that's efficient.  So that would be a factor

13  weighing against doing it in that order.

14      Ms. Beneski and Ms. Hoffman, that seems inefficient.

15      MS. BENESKI:  So, Your Honor -- so -- so the way I

16  would suggest thinking about this is that the basis for our

17  motion to transfer is not only a lack of personal jurisdiction

18  over the state officials but also that the interest of justice

19  weighs strongly in favor of a local court deciding this local

20  dispute over sports betting in Washington State.  What we have

21  here is a Washington plaintiff, Maverick Gaming, challenging

22  Washington law and asking for relief that would have really

23  significant impacts in Washington and nowhere else.

24      So even setting aside the uncontested lack of personal

25  jurisdiction, there are strong grounds for transferring the

1   case in the interests of justice and convenience.  And that

2   will -- that is -- that is the case even if Maverick were to

3   amend its complaint as proposed, because that proposed amended

4   complaint is still loaded with allegations that Washington

5   State law is unconstitutional or invalid.

6        THE COURT:  Although it's not framed that way.  It's

7   framed as the Secretary of the Interior should not have

8   approved the gaming compact.  But the reasons why, according to

9   the plaintiff, the Secretary should not have approved it was

10  because the state law is inconsistent with the federal law.  So

11  I think it raises issues, but that's not the way it's framed.

12       Ms. Hoffman, did you want to be heard on this?

13       MS. BENESKI:  If I may respond to the last point you

14  made, Your Honor.

15       This is the exact same issue that the Court in *Stand Up

16  for California!* addressed.  In that case, Chief Judge Howell

17  said that it defied logic for the plaintiff to say that the

18  state's interests weren't at issue and that it was not

19  indispensable because the plaintiff was only challenging the

20  action of the Secretary.  But the Secretary had approved the

21  California governor's concurrence in taking land into trust for

22  the tribe.  And Chief Judge Howell said that any claims related

23  to the governor's concurrence, the state is indispensable as to

24  those claims.  And that's the same situation that we're in

25  here.

1    THE COURT:  No, I understand that.  My question is

2    just whether I should even go there; whether I should simply

3    grant the motion to transfer and just let this all be litigated

4    in Washington.  But one factor that might weigh against doing

5    that is the inefficiency of requiring plaintiff to then file a

6    motion to transfer back to D.C. in the event that the motion to

7    amend is granted in Washington State.  Then it's, kind of,

8    having this case ping-ponging back and forth off the coasts,

9    which I don't think is an efficient use of judicial resources.

10    Did you want to be heard on that point, Ms. Hoffman,

11    in terms of the order in which these motions should be

12    considered?

13    MS. HOFFMAN:  Your Honor, I'd just like to point out

14    that the federal defendants joined the motion to transfer on

15    1404(a) grounds.  So we agree that there are significant local

16    interests emanating towards transfer, and that's, you know,

17    completely separate and apart from the juris- -- the unopposed

18    jurisdictional issues that -- you know, that we've been

19    discussing.  So transfer just seems not only appropriate but

20    maybe the most straightforward choice -- choice right now.

21    THE COURT:  I think that there is some weight to the

22    argument that, even putting aside the motion to amend, there

23    are a lot of other factors that weigh in favor of transfer, and

24    even putting aside the jurisdictional issues.  I'm sort of

25    leaning in that direction.  I might want to take a break to

1    think about this since this is going to be a much shorter

2    hearing than we anticipated if we go that route.

3         I want to give Mr. Shelfer one more opportunity before I

4    take a short break.

5         MR. SHELFER:  Thank you, Your Honor.

6         I would be happy to -- to address some of the transfer

7    factors.  *Stand Up for California!* was just mentioned, but that

8    case, you know, involved a question of state law:  Did the

9    California governor as a matter of state law have authority to

10   issue its concurrence; which is very different from this case

11   and from numerous run-of-the-mill APA IGRA cases that are

12   routinely litigated in this District.

13        THE COURT:  Mr. Shelfer, I read your complaint as

14   challenging the entire structure of Washington's gaming laws.

15   I see you challenging the policy decision that that state has

16   made to allow the class III gaming to occur at Indian tribal

17   casinos and -- and those types of lands and not elsewhere.

18   That's kind of what animates your entire complaint.  It's hard

19   for me to see any way of framing this case as not implicating

20   Washington State law and Washington State policies and

21   Washington State, I guess, fiscal consequences.

22        MR. SHELFER:  Well, Your Honor, the Washington State

23   scheme is implicated only to the extent that it violates IGRA

24   and the Equal Protection Clause of the Constitution.  And this

25   very similar claim was raised just last year before

1    Judge Friedrich in *West Flagler*.  One -- one of the claims was

2    a very similar tribal monopoly/equal protection claim, but

3    there was no discussion of transfer.  In fact, in that case,

4    the United States had moved to transfer to the Northern

5    District of Florida because a parallel challenge was -- was

6    happening at the same time in the Northern District of Florida.

7    And once that challenge was dismissed, the United States

8    withdrew its -- its motion to transfer because it saw no --

9         THE COURT:  So -- but how is this helpful here if

10   there was no motion for transfer?

11        MR. SHELFER:  Well, there was no other -- no -- none

12   of the parties thought that there was another reason to

13   transfer.

14        THE COURT:  Well, here they do.  Here we have parties

15   asking for transfer.  So I don't know how that's helpful that

16   in another case where the issue wasn't raised, the case wasn't

17   transferred.

18        MR. SHELFER:  Well, I didn't -- the point, Your

19   Honor, is one of the key elements of the public interest

20   factors in terms of -- of the consideration of whether to

21   transfer is whether the case raises a question of national

22   importance.  This case does because there are several schemes

23   in several states that give a similar tribal monopoly, and the

24   question is not one of interpretation of state law.  The

25   question is:  Is this a question of national importance?  Will

1    it have --

2            THE COURT:  I'm sorry.  Let me -- let me -- I'd like

3    to understand better what you're trying to argue.  Because I --

4    my understanding of the legal issue in this case is that the

5    Washington State law that makes it a crime for nontribal

6    entities to engage in gaming, that you're challenging that.  So

7    that's a state law issue that you're saying is in conflict with

8    IGRA and perhaps the Constitution.  So that's a state law issue

9    that you're challenging.

10       What is the national interest that you're promoting

11   here?  Because that seems to be a very state-specific challenge

12   you're making.  What is the national interest that you're

13   promoting here?

14           MR. SHELFER:  Well, the entire -- the agency action

15   that is under review here is a federal action.  So in

16   Washington, currently it's against the law for anyone to offer

17   sports gaming.  The state and the tribe entered into a compact

18   that would allow that sports gaming by tribes on land.  But

19   that compact only has -- only has the power to authorize that

20   gaming if it is approved by the Secretary of the Interior.

21   It's a federal act that makes that by virtue of federal law

22   allowable on Indian lands in Washington.

23           THE COURT:  I understand all that.  I'm still waiting

24   for the national interest and the facts and issues raised in

25   this case.

```
 1              MR. SHELFER:  So the national interest here, you

 2      know, is -- is that -- is the question of whether that scheme,

 3      which exists in -- in several states, complies with federal

 4      law, federal statute, and the federal Constitution.  Because

 5      gaming exists on Indian land only by virtue of -- of the

 6      federal government allowing it as part of its trust

 7      responsibility.  And so it is -- it is only federal action that

 8      can allow it in a certain context.  The -- this --

 9              THE COURT:  So you're saying, Mr. Shelfer, that every

10      single case involving a tribal compact, which has to be

11      approved under the scheme by the Secretary of the Interior, is

12      of national importance.  There's nothing particular about this

13      case; it's just that it's about a gaming compact that makes it

14      a national interest?

15              MR. SHELFER:  Well, I think -- so I think -- one, I

16      do think that -- that any federal agency action that -- that is

17      authorized in D.C. and takes legal effect by virtue of -- of a

18      cabinet secretary approving it and becomes federal law, by

19      virtue of that, is of national importance.  But this is of

20      particular national importance because there are also national

21      consequences for several states across the country that have

22      similar, as I noted in Florida, and other --

23              THE COURT:  Please tell me.  That's what I'm trying

24      to get at.  What are the national interests at stake in this

25      particular case?
```

1        MR. SHELFER:  Because there are a range of states --

2    this is going to have a similar impact on a range of states,

3    just as in the *Stewart* case from a few years ago.

4        THE COURT:  I'm sorry, Mr. Shelfer.  Can you just

5    tell me what is the national interest that is at stake here?

6        MR. SHELFER:  The national interest --

7        THE COURT:  Just because I see this as an attack on

8    Washington State's gaming law, which criminalizes nontribal

9    entities from engaging in class III gaming activities.  To me

10    that's not a national interest.  That's a Washington State

11    issue.

12        You're telling me, no, no, these are issues of national

13    importance, and I'm trying to pinpoint what exactly are the

14    issues of national importance.  And then you're saying, well,

15    it's approved by the Secretary of the Interior.  That's

16    federal.  And I'm saying, are you saying all the gaming

17    compacts -- every gaming compact that's approved by the

18    interior secretary raises national issues?  And you said yes,

19    but also in this particular case.  And that's what I'm trying

20    to home in on.

21        What are the issues in this particular case that raise

22    issues of national importance?

23        MR. SHELFER:  So, yes.  I think, yes, every gaming

24    compact does raise national policy issues.  But in particular,

25    when -- when a Secretary approves a certain gaming compact,

1    that -- where that approval has -- will have ripple effects

2    by -- that will approve other potential gaming compacts that

3    are contemplated in other states or that have already --

4            THE COURT:  Can you give me an example of that?

5            MR. SHELFER:  Well --

6            THE COURT:  Can you give me an example of a ripple

7    effect?

8            MR. SHELFER:  Well, a ripple effect -- for instance,

9    if this Court were to -- to agree with our position that --

10   that -- that the scheme that the Secretary approved violates

11   IGRA and violates the Constitution, that would have effects in

12   Florida, which also has a similar tribal compact.

13           THE COURT:  Can you explain that?  Can you explain

14   what that is?  Because my understanding is if I were to rule

15   that, it would be about the law of Washington State.  So can

16   you explain?  I'm just trying to understand.

17           MR. SHELFER:  Sure.  The law of Washington State

18   here, it's not -- we're not putting forth some

19   interpretation -- a disputed interpretation of Washington law.

20   We're really pointing to the fact that Washington, like several

21   other states, makes sports gaming illegal.  But by virtue of

22   the federal law, IGRA is now -- has asked the Secretary to

23   make -- give a monopoly of that to tribes so that -- normally

24   no one else can offer it, but now only the tribes can.  That is

25   a situation that other states, like Florida, have also

1    implemented and that several other states --

2          THE COURT:  What's the law in Florida?  Is the law in

3    Florida the same; that there's a criminal statute that prevents

4    people who are not -- it doesn't seem to be that way from

5    reading *West Flagler*.  It seems to be a different scheme.

6          MR. SHELFER:  It's a similar scheme and it was

7    brought in a scheme claim.  Now, of course --

8          THE COURT:  Can you be more specific about how it's

9    the same?  Because in *West Flagler* -- I don't know about

10   Florida gaming law, but that case involved casinos that were

11   doing class III gaming.  It was just the sports betting that

12   was at issue.  But in this case --

13         MR. SHELFER:  That's right.

14         THE COURT:  -- you seem to be challenging the law

15   that says there's no class III gaming for nontribal entities in

16   Washington.

17         MR. SHELFER:  Well, so, you know --

18         THE COURT:  So if you could just very specifically

19   walk me through how a ruling in this case would affect Florida,

20   I would appreciate it, because I'm not following.

21         MR. SHELFER:  Sure.  So in Florida, sports gaming

22   currently is not legal.

23         THE COURT:  Sports betting.

24         MR. SHELFER:  What's that?

25         THE COURT:  Sports betting.

1            MR. SHELFER:  Right.  Sports betting.  Sports

2       gambling.

3            Under the compact that the Seminole and the State of

4       Florida entered into, there was a certain scheme that allowed

5       sports gambling in a very specific way that was conducted by

6       tribes.  That compact was approved by the Secretary and was

7       litigated before Judge Friedrich.  And they brought several

8       claims, one of which -- the one that ultimately prevailed --

9       was that the gaming takes place off Indian lands and,

10      therefore --

11           (Indiscernible simultaneous cross-talk.)

12           THE COURT:  Yes.

13           MR. SHELFER:  -- IGRA; right?  But another claim that

14      was in that case was the same equal protection claim that

15      Florida allows only the Seminole tribe to offer sports gambling

16      and, therefore, violates equal protection because all other

17      sports gambling is illegal.

18           THE COURT:  So you're saying that issue in this case

19      is of national significance?

20           MR. SHELFER:  That's right.  And -- and similar -- I

21      would point the Court to the *Stewart* case that Judge Boasberg

22      issued a couple years ago about Medicaid can't -- can't --

23      since then, Medicaid scheme that was then approved by -- by

24      HHS, and in that case, it was similar.  It was only that

25      state's Medicaid plan that was approved, but it had effects

1    across the nation because it was very similar to those in other

2    states.  So it had this -- this same national policy impact.

3         THE COURT:  So assuming that that aspect of your

4    argument has some national implications, this is -- we have to

5    look at a variety of factors here, not just that one.  And it

6    seems that the issues are predominantly in this case related to

7    Washington State law and the Washington State gambling scheme.

8         MR. SHELFER:  I would respectfully disagree with

9    that, Your Honor.  The -- the only Washington-specific issue is

10   that the scheme does not allow that -- Washington does not

11   allow sports gambling, except it wants to give the tribes the

12   ability to do so.  And so it has asked the Secretary to approve

13   a compact amendment.  And the only questions in this case are

14   questions of federal law.  IGRA, we submit, does not allow

15   tribal monopolies of -- of particular class III games that way.

16   We think that's in the text of IGRA.  We think that's also --

17        THE COURT:  No, I understand that, but that seems to

18   be a challenge to the Washington State scheme.

19        MR. SHELFER:  What's that?

20        THE COURT:  I understand that's your argument, but

21   that seems to be a challenge to the Washington State scheme

22   specifically.

23        MR. SHELFER:  Well, it's a challenge specifically to

24   the Secretary's approval of the compact amendment.  If we

25   prevail in this case, the only relief that we would receive is

1    to set aside the Secretary's approval of the compact

2    amendments.  We're not -- so that's the only thing.  And the

3    only question is did the Secretary, a federal cabinet

4    secretary -- did that final federal agency action under the APA

5    comply with a federal statute.

6            THE COURT:  I understand.  We don't need to get into

7    the merits of this.  I'm just trying to figure out the transfer

8    motion brief.  I also need to allow standing -- to be honest, I

9    think you have a lot of standing issues with your complaint too

10    since the only -- the only relief you're asking for is

11    invalidation of the compact, which I don't know that you have

12    standing really --

13            MR. SHELFER:  Well, we obviously would be --

14            THE COURT:  -- to challenge.  That -- that's -- that

15    also goes to futility.  But I guess, right now, I'm just trying

16    to figure out whether I should grant the motion to transfer and

17    just let the rest of this be litigated in Washington State; and

18    I'm inclined just to take a break to think about that for a

19    minute because that's not what I was planning to do.

20        Was there anything that either Ms. Beneski or

21    Ms. Hoffman would like to add before I take a break?

22            MS. BENESKI:  If I may, Your Honor, I'd like to

23    respond briefly to some of the points that Mr. Shelfer just

24    made.

25        This is the first time I've ever heard the allegation

1    that Florida law is the same as Washington's in this respect.

2    Maverick didn't sue any Florida officials in this case, didn't

3    try to consolidate this case with *West Flagler*, didn't

4    challenge Florida law in its complaint; and the relief they're

5    requesting would only have an effect in Washington State

6    because they're asking for invalidation of compacts with

7    Washington tribes that pertain to gaming on tribal lands within

8    the state of Washington.

9        I submit, Your Honor, that the most significant factor

10   in terms of transfer in the interests of justice is the public

11   interest in having a local court decide this local controversy.

12       THE COURT:  Thank you.  Anything from you,

13   Ms. Hoffman?

14       MS. HOFFMAN:  Just very quickly, Your Honor.

15       I just want to make what seems the obvious point; that

16   district courts across the country deal with constitutional

17   claims all the time.  So while plaintiff counsel may think

18   there's something particularly interesting about this case, I

19   mean, district courts all across the nation take on these

20   issues, you know, regularly.  So I don't think that any

21   purported national importance really weighs against the local

22   interests in this case.

23       Thank you.

24       THE COURT:  All right.  Thank you.

25       All right.  I'm going to take maybe a ten-minute recess

1    to think about this.  So let's resume at -- what time is it?

2    2:40 -- at 2:50.  Thank you.

3                    (Recess taken.)

4                    THE COURTROOM DEPUTY:  Your Honor, we're back on the

5    record with 22-cv-68.

6                    THE COURT:  All right.  And for the record, all

7    parties are present.

8              I've had a chance to think through these issues over the

9    break, and I apologize for taking a little bit longer.  We were

10   doing a little bit of research on the order in which we should

11   consider these motions.

12             And we did find authority in the D.C. Circuit in the

13   case of *Kaplan v. Central Bank of the Islamic Republic of Iran*,

14   which is 896 F.3d 501 at 510, D.C. Circuit 2018.  The court

15   said that -- citing Supreme Court case law, "It is clear that

16   when personal jurisdiction is in question, a court must first

17   determine that it possesses personal jurisdiction over the

18   defendants before it can address the merits of a claim."

19             And in this case, the ruling on the motion to amend

20   would require me to address some of the merits of the claims in

21   this case because there is an argument that the proposed

22   amended complaint is futile.  And to evaluate that futility

23   argument, I would have to address the merits of the claim and

24   hear argument about it.  And so I think that this precedent

25   stands for the proposition that under the present

1    circumstances, I should decide first the motion to transfer.

2          Here, the defendants have moved to transfer this case to

3    the Western District of Washington on two grounds.  One is

4    based on lack of personal jurisdiction over the state

5    defendants in these proceedings, and the second is based on the

6    convenience of the parties and in the interests of justice; and

7    I think all of those factors weigh in favor of transfer.

8          With respect to personal jurisdiction, the plaintiff has

9    conceded the state defendants' argument this Court lacks

10   personal jurisdiction over the state defendants.  And I'm

11   citing Local Civil Rule 7(b) and also *Kenner v. Berryhill*,

12   which is at 316 F. Supp. 3d 530 at 537.  That's a D.D.C. case

13   from 2018.  In that case, the court held, "[I]t is well

14   understood in this Circuit that when a party files an

15   opposition to a dispositive motion and addresses only certain

16   arguments raised by the opposing party, a court may treat those

17   arguments [that] were not addressed as conceded."

18         And I think that's a very standard and inarguable legal

19   proposition that if you do not oppose or respond, then you've

20   conceded the argument.  And, here, Maverick has failed to

21   address any of the arguments about personal jurisdiction in its

22   opposition to the motion for transfer.  Although today Maverick

23   requested an opportunity for supplemental briefing, I think

24   it's well within my discretion to hold that that's not

25   warranted or justified; where the motion for transfer squarely

1    raised the issue of personal jurisdiction and that was the time

2    to oppose and Maverick did not.

3        And nowhere in Maverick's pleadings did they reserve the

4    right to address this later with further briefing or request an

5    opportunity for further briefing after the motion to amend was

6    litigated.  And so for them to come in today and make that

7    request and assume that they were permitted to address issues

8    that were squarely raised in the papers with supplemental

9    briefing, I think, is unwarranted, uncalled for.  And so any

10   such request, I think, would have to be denied.  And so they've

11   conceded that.

12       And the -- the motion to transfer should, therefore, be

13   granted on the ground that this Court lacks personal

14   jurisdiction over the state defendants; whereas the transferee

15   court, the Western District of Washington, does have personal

16   jurisdiction over those defendants.

17       Alternatively, the second grounds on which the

18   defendants move to transfer was for the convenience of the

19   parties and in the interests of justice.  So 28 U.S.C.

20   § 1404(a) provides that for the convenience of parties and

21   witnesses, in the interests of justice, a district court may

22   transfer any civil action to any other district or division

23   where it might have been brought or to any district or division

24   to which all parties have consented.

25       So, here, the movants, the defendants, have shown that

1    the plaintiff could have originally brought the case in the

2    transferee district, which is the Western District of

3    Washington, and also the movants must show that considerations

4    of convenience in the interests of justice weigh in favor of

5    transfer, which I think that they have shown in this case.

6         This inquiry calls upon the district court to weigh the

7    balance and number of case-specific factors related to the

8    public and private interest at stake.  The public interest

9    factors are the transferee's familiarity with governing laws,

10   the relative congestion of the calendar of the transferor and

11   transferee courts, and the local interest in having local

12   controversies decided at home.  So, here, I think those -- I

13   think the congestion factor does not weigh one way or the other

14   in favor of transfer, but I think the first and third trans- --

15   transfer factors do weigh in favor of transfer.

16        The first is the familiarity with governing laws.  And,

17   here, to the extent that Washington State law is implicated in

18   the APA challenge, the Western District of Washington has

19   greater familiarity with state law.  I'm -- I am working with

20   the complaint that's currently before the Court, which does

21   challenge the criminal statute -- the statute -- or, rather,

22   the statute that criminalizes the engagement in class III

23   gaming by nontribal entities.  And so I think that the entire

24   scheme is implicated, including the laws of Washington State.

25        And in terms of the strong local interest in having

1    local controversies decided at home, I think that that is

2    really the strongest factor that weighs in favor of transfer.

3    The current complaint and the amended complaint challenge

4    compacts that Washington State has entered into with tribes in

5    Washington State, and the current complaint very explicitly

6    challenges Washington State's enforcement of the compacts and

7    the laws of the state.

8         This case challenges the state's practices in the gaming

9    arena.  Those laws and practices reflect the policy choices

10   that the state has made and implicate the state's economic

11   interests and its relationships with tribes in Washington

12   State.  And so I think all of those are -- are local interests

13   that should be decided in Washington State.

14        And although plaintiff claims that its equal protection

15   claim is of national interest, this Court agrees with the

16   federal defendants that simply raising a constitutional issue

17   does not make a case one of national importance.

18   Constitutional issues are frequently raised, and that does not

19   weigh heavily in this analysis.

20        In terms of the private interest factors, the private

21   interest factors are the plaintiff's choice of forum, the

22   defendants' choice of forum, where the claim arose elsewhere;

23   the convenience of the parties, the convenience of the

24   witnesses; and the case -- ease of access to sources of proof.

25   I think -- although the plaintiff's choice of forum is

1    Washington, D.C., I think the rest of these factors weigh in

2    favor of transferring the case to Washington State.  And,

3    again, I am dealing with the current complaint that's before

4    the Court because I have not granted any motion to amend.

5        And so the defendants' choice of forum is Washington

6    State, and I think that this claim -- all the claims in the

7    current complaint arose in Washington State.  The compact

8    between the state and the tribes was entered into in Washington

9    State.  And Counts 2 and 3 challenge the state's execution and

10   administration of the compacts, as well as the state's

11   enforcement of its criminal prohibitions against class III

12   gaming.  And so I think those claims all arose in Washington

13   State.

14       With respect to the convenience of the parties, the

15   convenience of witnesses, and ease of access to sources of

16   proof, I think all of that, given the issues raised, weigh in

17   favor of Washington State.

18       And I would note too that even if the complaint were

19   amended as proposed by the plaintiff, I still believe that the

20   balance of factors would weigh in favor of hearing this case in

21   Washington State.  And that's because, at bottom, the case

22   would still challenge the gaming laws and practices of

23   Washington State.  And so I think the -- the public factors

24   would still remain the same.

25       And with respect to the convenience factors and other

1    factors, it seems to me that if this complaint is amended, the

2    nature of the case would be less fact intensive and more of

3    legal -- more focused on legal arguments.  And for that reason,

4    I don't think it -- it weighs heavily that the Secretary of the

5    Interior is located in Washington, D.C.  I know that there's an

6    argument that under the amended complaint, the actions at issue

7    occurred in Washington, because they're challenging the

8    approval of a compact by the Secretary of the Interior.

9         But given that that location, really, has nothing to do

10   with the legal or factual issues that would be raised in

11   resolving the case, I don't think that weighs in favor of

12   hearing this case in Washington just because the Secretary is

13   here.  I don't think that would make any difference.  And so

14   given the very strong interests that Washington State would

15   have, in any event, even if the complaint is amended, I think

16   that either way, it's appropriate that this case be heard in

17   Washington State.

18        So with that, I am going to grant the motion to

19   transfer, and I am going to allow the transferee court to

20   address the motion to amend.

21        Does any party want any additional findings of fact or

22   conclusions of law for the record?

23            MR. SHELFER:  Your Honor, this is Lochlan Shelfer

24   from Maverick.

25        Just to confirm, so are you holding that even under the

1    amended complaint, both the private interest factors and the

2    public interest factors weigh in favor of transfer or --

3                THE COURT:  Yes.

4                MR. SHELFER:  Okay.

5                THE COURT:  Do the defendants want any additional

6    findings of facts or conclusions of law?

7                MS. BENESKI:  Not for the state defendants.  Thank

8    you, Your Honor.

9                MS. HOFFMAN:  Not for the federal defendants either.

10   Thank you.

11               THE COURT:  All right.  Thank you.

12          So the motion to transfer will be granted.  This case

13   will be transferred to the Western District of Washington.

14          The motion to amend the complaint will remain

15   outstanding and will be addressed by the transferee court.

16          Thank you.  Parties are excused.

17               (Proceedings were concluded at 3:24 p.m.)

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 8th day of May, 2022.

/s/ Nancy J. Meyer
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001